UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | No.: | 3:05-CR-112 |
| | ) | | (VARLAN/SHIRLEY) |
| MELVIN DAVIS | ) | | |

## **MEMORANDUM & ORDER**

Defendant Melvin Davis is charged in two-count superseding indictment [Doc. 15] alleging he possessed with intent to distribute crack cocaine on March 9, 2005, and he possessed with intent to distribute crack cocaine within 1,000 yards of a public high school on August 24, 2005. These allegations arose after defendant was arrested by Investigator Todd Gilreath of the Organized Crime Unit of the Knoxville Police Department. Defendant has moved to suppress all evidence resulting from his March 9 and August 24, 2005 arrests on the grounds that those arrests were unlawful. [*See* Doc. 18]. Following an evidentiary hearing on December 16, 2005, Magistrate Judge C. Clifford Shirley, Jr. issued a comprehensive report and recommendation [Doc. 31] in which he recommended that defendant's motion to suppress be denied.

This criminal case is now before the Court for consideration of defendant's objections [Docs. 34, 36] to the report and recommendation. As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the report and recommendation to which defendant has objected. The Court has carefully reviewed Judge Shirley's report and recommendation, the transcript of proceedings before Judge Shirley [Doc. 39] and

exhibits presented, the defendant's objections, and the underlying pleadings [Docs. 18, 19, 25, 28]. For the reasons set forth herein, the Court will overrule defendant's objections and the motion to suppress will be denied.

I.      **Relevant Facts**

The facts as developed through the evidence presented before the Magistrate Judge on December 16, 2005, are throughly detailed in the report and recommendation and need not be repeated herein. The Court, however, will restate certain particularly relevant facts to facilitate the Court's review of the Magistrate Judge's conclusion and defendant's objections.

On March 9, 2005, Investigator Gilreath received information from a reliable confidential informant that defendant was "posted up" – an activity in which a crack dealer stands around waiting for crack users to approach him to purchase crack cocaine – along Martin Luther King Avenue in Knoxville, Tennessee. Investigator Gilreath corroborated the informant's information when he went to the location and observed defendant. Investigator Gilreath contacted the Organized Crime Unit and requested a check on the status of defendant's license.

When he requested the driver's license information, Investigator Gilreath referred to defendant as "Tate," with 1980 as his year of birth. At that time, Investigator Gilreath knew defendant used several different aliases, including "Little Melvin," "Melvin Davis,"and "Melvin Tate," but he believed defendant's real name was Melvin Tate. In response to his request for driver's license information, Investigator Gilreath was told that a person with the

2

name Tate and with a February 7, 1980 birth date did not have a driver's license on file. Based on this information, Investigator Gilreath believed that defendant did not have a driver's license.

Around the time Investigator Gilreath received the driver's license information, he observed defendant get into the driver's seat of a blue Nissan Maxima. Investigator Gilreath observed defendant driving the car for several blocks. Investigator Gilreath observed defendant pull into a parking lot in front of a barbershop at the corner of Harrison and Wilson Avenues. Investigator Gilreath, who was operating an unmarked police vehicle, followed defendant into the parking lot.

As Investigator Gilreath pulled into the parking lot behind defendant, he observed defendant exit the vehicle and quickly move toward the barbershop. Investigator Gilreath exited his vehicle and followed defendant through the front door of the barbershop. As he moved toward defendant, Investigator Gilreath called to defendant and said he needed to talk to defendant. The two men stepped back outside the front door of the barbershop.

Investigator Gilreath asked defendant if he had a driver's license. Defendant stated that he did not. While talking with defendant, Investigator Gilreath noticed marijuana was clinging to the front thigh and abdomen area of defendant's jogging suit. Based on the observation of marijuana, Investigator Gilreath determined that defendant would be placed under arrest. The arrest was executed by Knoxville Police Department Lieutenant Mark Fortner, who was on the scene to assist Investigator Gilreath.

Following defendant's arrest, Lieutenant Fortner conducted a search of defendant and found crack cocaine in his sock. Defendant's vehicle was impounded and defendant was transported to the Knoxville Police Department. While defendant was being transported, Investigator Gilreath gave defendant the *Miranda* warning. Once at the Knoxville Police Department, defendant was moved to the Organized Crime Unit, where he was given another *Miranda* warning before he was interviewed by an FBI special agent. Sometime during defendant's interview, Investigator Gilreath claims he learned for the first time that defendant's real name is Melvin Davis, not Melvin Tate.

Following the interview, defendant agreed to operate as a confidential informant for the Knoxville Police Department and the FBI. Between March 2005 and August 2005, Investigator Gilreath met with defendant several times. During his conversations with defendant, Investigator Gilreath discussed defendant's driver's license status. At some point defendant sought Investigator Gilreath's assistance in paying the fee to get his license reinstated because defendant could not afford it, but Investigator Gilreath declined.

On August 24, 2005, Investigator Gilreath received information from a reliable confidential informant that defendant was behind or around the corner from a building on Martin Luther King Avenue smoking marijuana. Investigator Gilreath and Knoxville Police Department Sergeant Brian Malone drove in an unmarked police vehicle toward the area when Investigator Gilreath's confidential informant called Investigator Gilreath again to say that defendant was at the location with two girls. Investigator Gilreath and Sergeant Malone arrived in the area where defendant was and observed him driving a black Jeep Cherokee.

Investigator Gilreath and Sergeant Malone began to follow defendant south on Chestnut Avenue.

While following defendant, Investigator Gilreath observed defendant pass an object to one of the female passengers. Investigator Gilreath requested the assistance of a marked police vehicle and a female officer. Sometime after Investigator Gilreath requested assistance, defendant drove into the drop-off area of Austin East High School and stopped, as if to drop off the two female passengers at school. Investigator Gilreath and Sergeant Malone followed defendant into the drop-off area.

After defendant had stopped his vehicle in the drop-off area to let the two females out, Investigator Gilreath walked up to the passenger side of the vehicle while Sergeant Malone approached the driver's side and asked defendant for his driver's license. He replied that he did not have a driver's license. While talking with defendant and the two female passengers, Investigator Gilreath observed marijuana on the console of the vehicle and smelled the odor of burned marijuana coming from inside the vehicle.

Investigator Gilreath asked the female passenger who had been in the front passenger seat whether she had been given anything by defendant. She responded that she had. Investigator Gilreath asked where it was. She responded by opening her purse. Investigator Gilreath observed a bag of crack cocaine inside the purse.

After observing the crack cocaine, Investigator Gilreath seized it and placed defendant under arrest. Defendant was transported back to the Knoxville Police Department and given

5

the *Miranda* warning. During a subsequent interview, defendant admitted that he had been dealing drugs.

## II. Standard of Review

As noted previously, this Court reviews *de novo* defendant's objections to the Magistrate Judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1). In the present case, Magistrate Judge Shirley concluded that defendant was not unlawfully seized when he was arrested on March 9 and August 24, 2005, and as a result, the accompanying searches and statements of defendant were not unconstitutional. Defendant has filed six objections to this conclusion. [*See* Docs. 34, 36]. The Court will review Judge Shirley's conclusion and address each objection in turn.

## III. Discussion

In his motion to suppress, defendant argues that the March 9, 2005 arrest was unlawful because Investigator Gilreath merely suspected defendant lacked a driver's license and failed to take reasonable steps to confirm his hunch. Defendant argues that the August 24, 2005 arrest was unlawful because it is the result of Investigator's Gilreath's knowledge of defendant's lack of a valid driver's license, which was information obtained from the allegedly unlawful March 9 arrest. Defendant also argues that the August 24, 2005 arrest was unlawful because the information regarding defendant's lack of a driver's license was stale, and Investigator Gilreath failed to take reasonable steps to confirm his hunch that defendant had not obtained a driver's license since May.

6

The Magistrate Judge rejected defendant's arguments and concluded that both arrests were lawful and the accompanying statements and evidence are admissible. With respect to the May 9, 2005 arrest, the Magistrate Judge drew two conclusions. First, the Magistrate Judge concluded that Investigator Gilreath had reasonable suspicion to approach defendant and ask about defendant's driver's license, because Investigator's factual mistake about defendant's correct name was reasonable under the circumstances. Second, the Magistrate Judge concluded that even in the absence of reasonable suspicion, Investigator Gilreath's approach of defendant in front of the barbershop began as a consensual encounter.

With respect to the August 24, 2005 arrest, the Magistrate Judge concluded that the information about defendant's lack of a driver's license was not stale in light of defendant's ongoing contact with Investigator Gilreath. Based on that information, Investigator Gilreath had reasonable suspicion to approach defendant and inquire about his driver's license.

A. <u>March 9, 2005 Arrest</u>

Defendant states four objections related to his March 9, 2005 arrest. First, he objects to the Magistrate Judge's finding that Investigator Gilreath had reasonable suspicion to stop defendant even though Investigator Gilreath was mistaken about defendant's true identity, because defendant argues Investigator Gilreath's explanation for his belief that defendant was known as "Tate" is not credible. [*See* Doc. 36 at 1-2]. Defendant also objects "to the finding by the [M]agistrate Court that the [March 9, 2005] seizure of Mr. Davis was a 'consensual' encounter," because "[a]bsent any reason to approach Mr. Davis while he was in the barbershop, Mr. Davis had the right and the expectation to be left alone." [*Id*. at 3-4].

7

Third, defendant objects to the Magistrate Judge's reliance on *United States v. Waldon*, 206 F.3d 597 (6th Cir. 2000), because in the present case "Officer Gilreath approached Mr. Davis [on March 9, 2005,] with the sole intention to seize him and acted in accordance with that intention." [*Id*. at 4]. Finally, defendant objects that "there was little testimony as to the exact nature of the encounter [inside the barbershop on March 9, 2005] and whether it was 'consensual'" and requests further testimony on the issue. [*Id*. at 5-6].

Turning to defendant's objection regarding Investigator Gilreath's explanation for his belief that defendant was known as "Tate," the Magistrate Judge concluded that Investigator Gilreath's factual error about defendant's name was reasonable under the circumstances because defendant had used the alias "Tate" and it was the name by which Investigator Gilreath knew defendant. Defendant suggests that Investigator Gilreath knew, or should have known, defendant had other aliases, and it was unreasonable for Investigator Gilreath to conduct the driver's license check using the name "Tate."

The Court agrees with the Magistrate Judge's conclusion and rejects defendant's argument. A factual mistake can justify an investigatory stop if an officer acted reasonably upon the mistake. *See Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814 (citing *United States v. Shareef*, 100 F.3d 1491, 1505-06 (10th Cir. 1996)). *See also Von Herbert v. City of St. Clair Shores*, 61 Fed.Appx. 133, 142 n.5 (6th Cir. 2003) (Krupansky, J., dissenting) (citation omitted) ("Even a mistaken premise can justify a reasonable suspicion, if the officer's belief in that premise was reasonable and in good faith, and, if true, would authorize a Terry stop."); *United States v. Twilley*, 222 F.3d 1092, 1096 n.1 (9th Cir.

8

2000) (citations omitted) ("A factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop."). In this case, Investigator was mistaken about defendant's true name, but he acted reasonably when he requested a driver's license check using the name "Tate" and the 1980 birth date. Thus, when Investigator Gilreath learned that there was no driver's license on record, he had reasonable suspicion to approach defendant, who had been operating a motor vehicle, to investigate whether defendant actually had a driver's license.

Turning to defendant's remaining objections to the Magistrate Judge's conclusions regarding the May 9, 2005 arrest, even assuming the absence of reasonable suspicion, the Magistrate Judge concluded that Investigator Gilreath's initial contact with defendant at the barbershop was a consensual encounter. Defendant argues that defendant had "the right and the expectation to be left alone." [Doc. 36 at 3-4]. Defendant also argues that the Magistrate Judge misapplied the law in relying on *United States v. Waldon*, 206 F.3d 597, and that more testimony is needed to determine whether the encounter was actually consensual.

Again, the Court agrees with the Magistrate Judge's conclusion and rejects defendant's arguments. A police-citizen encounter does not implicate the Fourth Amendment where a police officer approaches someone in a public place and asks the person to answer a few questions. *See Florida v. Bostick*, 501 U.S. 429 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). The Fourth Amendment is implicated when the police officer's coercive or intimidating conduct negates the reasonable belief that compliance is not required, and the person is "seized" and no longer "free to leave." *See Royer*, 460 U.S. at

9

502; *United States v. Buchanon*, 72 F.3d 1217, 1225-26 (6th Cir. 1995); *United States v. Collis*, 766 F.2d 219, 221 (6th Cir.), *cert. denied*, 474 U.S. 851 (1985). A person is seized and no longer free to leave when "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 723 F.2d 1221, 1225 (6th Cir. 1983) (citations omitted). *See also United States v. Waldon*, 206 F.3d 597, 603 (6th Cir.), *cert. denied*, 531 U.S. 881 (2000) (consensual encounter where officer "refrain[s] from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave."). In the absence of a warrant, a person may be seized only where there is probable cause to believe a felony is being or has been committed by the arrested individual, based upon the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996).

In the present case, there is sufficient evidence to conclude that Investigator Gilreath approached defendant in a public place and asked him whether he had a driver's license. As the Magistrate Judge pointed out, when he approached and spoke to defendant, Investigator Gilreath did not engage in "the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." *See Waldon*, 206 F.3d at 603. While speaking with defendant, Investigator Gilreath observed marijuana in plain view on defendant's outer clothing, which gave rise to probable cause to believe that defendant had been committing a felony. Based on that probable cause, defendant was arrested. During the search incident to that arrest, officers discovered crack cocaine in defendant's sock.

10

B.     August 24, 2005 Arrest

Turning to the August 24, 2005 arrest, defendant objects to the Magistrate Judge's reliance on *United States v. Sandridge*, 385 F.3d 1032 (6th Cir. 2004), when he concluded that the officer's information regarding defendant's revoked driver's license was not stale at the time of the August 24, 2005 arrest, because "that case can be distinguished from the case here." [*Id.* at 5]. Defendant argues that this case is distinguishable because *Sandridge* involved a three-week period during which it was reasonable to assume the driver's license offense was ongoing, and the present case involves a months-long period during which it would not be reasonable to assume the driver's license offense was ongoing.

The Court agrees with the Magistrate Judge's conclusion and rejects defendant's argument. "When a police officer conducts a brief investigatory stop of a person in a vehicle, 'the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *Sandridge*, 385 F.3d at 1036 (quoting *United States v. Ridge*, 329 F.3d 535, 540 (6th Cir. 2003)). "In situations where the criminal activity is of an ongoing nature, it will take longer for the information [giving rise to reasonable suspicion] to become stale." *Id.* (citing *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)). "Driving without a valid license is a continuing offense–in contrast, say, to a speeding or parking violation . . . ." *Id.* Where there are no facts suggesting the officer should assume that the ongoing offense has ceased, the officer has a reasonable basis for suspecting that the offense is ongoing, thereby permitting a stop to briefly determine as much. *Id.* (citing *United States v. Mans*, 999 F.2d 966, 968 (6th Cir. 1993)).

11

Applying these principles to the present case, the Magistrate Judge reasoned that it was reasonable for Investigator Gilreath to suspect defendant did not have a valid driver's license based upon their May 9, 2005 encounter and subsequent conversations. Defendant, attempting to distinguish this case from *Sandridge*, contends that the mere passage of time had rendered Investigator Gilreath's information stale, and thus it was not reasonable for him to suspect defendant did not have a valid driver's license. The passage of time was not the only fact known to Investigator Gilreath. He also knew that defendant had been unable to afford the fees to get his license reinstated. Thus, even though months had passed since Investigator Gilreath first learned that defendant did not have a valid driver's license, he had facts that bolstered his assumption that defendant lacked a valid driver's license, and he relied on those facts in reasonably suspecting defendant of driving without a valid driver's license.

Even assuming that Investigator Gilreath's information was stale and he lacked reasonable suspicion to stop defendant based on the revoked driver's license, however, a careful review of the evidence indicates that Investigator Gilreath also had reasonable suspicion to stop defendant based upon the informant's tip and his own observations of defendant and the two females. Investigator Gilreath received a tip from a reliable confidential informant who identified defendant and two females at a specific location and said they were smoking marijuana. When Investigator Gilreath arrived at the location, his observations corroborated the informant's tip. When Investigator Gilreath and Sergeant Malone began following defendant's vehicle, they observed the driver and passenger passing

12

an object between them.  Investigator Gilreath, relying on these facts, reasonable suspected that defendant was engaged in illegal drug activity.

When Investigator Gilreath and Sergeant Malone approached defendant's vehicle, Investigator Gilreath smelled burned marijuana from within the vehicle and observed marijuana in plain view on the vehicle console.  In response to Investigator's Gilreath's inquiry, one of the female passengers opened her purse, where Investigator Gilreath observed a bag of crack cocaine.  Investigator Gilreath, relying on those observations, had probable cause to believe that defendant had been committing a felony.  Based on that probable cause, defendant was arrested.

## IV. Conclusion

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation of Judge Shirley [Doc. 31].  Accordingly, the Court hereby **DENIES** defendant's motion to suppress evidence [Doc. 18].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE