UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-112 |
| | ) | (VARLAN/SHIRLEY) |
| MELVIN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter comes before the Court upon the defendant's Motion to Exclude Any Alleged Confession of Defendant and brief [Doc. 61], filed on March 10, 2006, and a subsequent Memorandum of Law In Support Of Motion To Exclude Testimony Of Polygraph Examination [Doc. 73], filed on March 15, 2006. The parties came before the Court for a suppression hearing on March 16, 2006. The government was represented by Assistant United States Attorney Steven H. Cook, and the defendant was represented by Christopher Oldham. The defendant was also present.

**I. POSITION OF THE PARTIES**

Defendant Davis moves [Doc. 61] the Court to enter an Order excluding the testimony of the government agent to whom the Defendant allegedly gave his confession to on

1

August 24, 2005. He states [Doc. 73] that the defendant was arrested on March 9, 2005 and again on August 24, 2005 in Knoxville, Tennessee by Officer Todd Gilreath of the Knoxville Police Department ("KPD"), and was charged [Doc. 15] with possession with intent to distribute cocaine base on both occasions, a violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). On the second occasion, the charge included the allegation that the defendant committed the offense within 1000 feet of a public secondary school, Austin East High School, a violation of 21 U.S.C. § 860. Subsequent to his arrest on August 24, 2005, the defendant states that he was taken to the offices at the KPD where he was questioned on several instances.

On March 7, 2006, the defendant avers that AUSA Steve Cook provided him with a copy of a videotaped statement of an alleged polygraph examination by KPD officer, Gary Anders, along with Officer Anders' notes from the interview. The defendant contends, as depicted on the videotape recording, that (1) Officer Anders advises the defendant of his Miranda rights and has the defendant sign a rights waiver form, (2) after Anders begins his interrogation, he asks the defendant if he is under the influence of any narcotics, at which time (3) the defendant advises Anders that he has smoked marijuana within two hours of the interview. The defendant argues that he was under the influence of marijuana while he was being interrogated by Officer Anders and that this should render his interrogation and any waivers suspect [Doc. 61 and 73]. Defense counsel also states that had the government timely provided the videotape to the defendant pursuant to the Court's Order on Discovery and Scheduling, counsel could have more fully explored the pharmacological effects that the marijuana may have had on the defendant's ability to knowingly and voluntarily waive his constitutional rights.

2

As to the issue of whether the defendant made a voluntary, knowing and intelligent waiver of his Miranda rights, the defendant first addresses the issue of voluntariness and coercion. Defense counsel states that because the government has provided no record to indicate why a polygraph examination was administered, "the most common explanation is that the investigating officer coerce[d] the defendant into giving a polygraph as a way to 'prove his innocence' or to 'help himself.'" [Doc. 73]. Second, as to the issue of the defendant's physical and mental condition, which speaks to his ability to knowingly and intelligently waive his rights, defense counsel argues that the defendant made it clear that he had been smoking pot prior to the videotaped interrogation, and that during the videotaped interrogation, the defendant's demeanor was consistent with a person under the influence of an intoxicant. Specifically, he argues that the defendant had slurred speech, was unable to sit still, rambled and was unable to focus or follow directions during the interrogation.

Additionally, the defendant contends that the government has advised him that it intends to use Officer Anders to introduce the statements of the defendant which occurred on the videotape. He argues that cross-examination of this witness will be difficult, if not impossible, without referring to the circumstances of the interrogation. Arguing that this will deprive the defendant of his Sixth Amendment right to effectively confront a witness against him, the defendant moves the Court to exclude the testimony of Officer Anders at the trial of this matter.

The government did not file a written response to Defendant Davis' motion.

## II. SUMMARY OF THE TESTIMONY

At the evidentiary hearing on this motion, the parties conducted opening arguments whereby the defendant began by stating that no experts would testify as to matters material to the

3

motion, but argued that the videotape would clearly indicate that the defendant was under the influence at the time he was being questioned and made his statement. The government, on the other hand, argued that the defendant made a knowing, intelligent and voluntary waiver of his rights, and that the same videotape would confirm that the defendant was completely coherent and in no way under the influence when he made his statement.

The government called Officer Gary Anders ("Officer Anders") as its first witness. Officer Anders testified that he has been employed with the Knoxville Police Department since 1979. He stated that he worked as a patrol officer from 1979-1993 and during that time, he dealt with (1) intoxicated individuals on many occasions, (2) he had to assess whether these individuals were intoxicated for DUI or DWI purposes, and (3) he would make arrests on the basis of his assessment. Officer Anders testified that he joined the Criminal Investigations Division in 1993, where he works as a polygraph examiner. Offer Anders testified that he was assigned to the Criminal Investigation Division ("CID") on August 24, 2005 and that he conducted a polygraph examination on that day. He stated that the CID does not have a policy with regard to videotaping polygraph examinations, but that he tapes them when he can.

Officer Anders testified that he was contacted by Officer Todd Gilreath at the KPD and asked to conduct an interview and polygraph examination of the defendant. He testified that the polygraph examination consists of several different parts: (1) execution of paperwork, including consent and waiver of rights forms, (2) pre-exam interview, where he obtains general background information from the defendant, explains how the polygraph instrument works and the procedure of the examination, (3) the polygraph examination, and (4) the post-examination interview. Officer Anders testified that he advises each examinee of their Miranda rights prior to conducting the

4

polygraph examination.

Referring to the Waiver of Rights form [Ex. SH3], which is dated August 24, 2005 and signed by the defendant at 10:10 a.m., Officer Anders testified that he read the "Statement of your Rights" portion of this form line-by-line to the defendant, that the defendant acknowledged that he understood each line, and that the defendant signed the waiver form. Anders agreed that in addition to issuing the Miranda rights to the defendant, he made observations with respect to whether the defendant was intoxicated. He testified that he observed the defendant to be sober, steady, did not have blood-shot eyes and the defendant was able to converse rationally. Anders stated that the defendant understood each line of the Miranda rights form.

Next, Officer Anders testified that he reviewed the "Consent to Polygraph Examination" form [SH2] with the defendant and also let the defendant review it on his own. He stated that the form, which is signed by the defendant and dated August 24, 2006, indicates that the defendant voluntarily agrees to be interviewed and polygraphed. Anders testified that he also told the defendant that an audiotape recording of the entire examination would be available to the defendant upon the defendant's request. After going through the paperwork with the defendant, Anders testified that he briefly explained to the defendant how the polygraph works, gave the defendant a recess break, and then administered the examination.

Officer Anders testified that during the course of the pre-exam interview and polygraph examination, he was the only officer present. He stated that he was dressed in plainclothes and did not have a firearm displayed at any time. Officer Anders testified that he did not promise, threaten, coerce or badger the defendant in any way. Anders testified that during the pre-exam interview, the defendant revealed to him that (1) he had slept approximately nine hours

5

the night before, and (2) he had no health problems and was not on any medication, but (3) that he had smoked marijuana a couple of hours prior to the interview. Officer Anders testified that after observing the defendant, he decided the defendant was not intoxicated and believed the defendant was able to proceed with the examination. At this time, the government played for the Court a segment of the videotape that corresponds with Officer Anders' aforementioned testimony [Ex. SH1].

As seen on the videotape, Officer Anders does in fact walk the defendant through the waiver of rights and consent forms, the defendant does acknowledge that he understands each line of the Miranda rights form, and the defendant does sign the forms. Officer Anders then proceeds to ask the defendant questions concerning his medical history. On the videotape, and in direct response to questions asked by Officer Anders, the defendant states that: (1) he is twenty-five years old, (2) he is single, (3) he gives his home address, (4) he describes his health as being good, (5) he states that he has had 8-9 hours of sleep since yesterday, (6) he has never had a heart attack, (7) he has not taken any medication, (8) he had smoked marijuana a couple of hours ago, (8) he states that he has not had any alcohol, (9) he has had no seizures, (10) he is not seeing a psychologist, and (11) he has had no other health problems.

In addition to obtaining the defendant's medical history, Officer Anders asked the defendant, as indicated on the videotape, whether he had dealt cocaine since March 9, 2005. The defendant stated that he had dealt cocaine twice since March 9, 2005. At this point in the tape, the defendant apparently attempts to explain the circumstances surrounding "why" he dealt cocaine on those occasions. After the videotape segment ended, the government resumed direct examination of Officer Anders, and asked him what the purpose of the question, regarding whether the defendant

6

had dealt cocaine since March 9, 2005, was. He explained that before he conducted the interview with the defendant, Officer Gilreath had told him that he had information that the defendant had dealt cocaine more than one time, and stated that he asked the defendant that question to "ferret out" whether the defendant was being truthful.

Officer Anders testified that when he asked the defendant about the stop from that morning, the defendant stated that the defendant had not given cocaine to the minor female and that the cocaine was not his. Anders stated that throughout the polygraph examination and post-examination interview, the defendant never changed his story. Officer Anders acknowledged that he generated a one (1) page report after administering the polygraph examination [Ex. SH4]. He furthermore testified that he started the examination at 10 a.m. and concluded it at 11:30 a.m. He stated that (1) he was in the room with the defendant the entire time, (2) he never detected that the defendant was intoxicated, (3) the defendant was oriented in time and place, and (4) there was no reason that the defendant could not knowingly and voluntarily waive his rights.

On cross-examination, Officer Anders indicated that he had not interviewed the defendant before and did not know whether Officer Gilreath had conducted an interview prior to Anders' interview. Anders testified that he would not have administered the polygraph examination if he believed that the defendant was under the influence of an intoxicating agent, explaining that it's a law of the American Polygraphers not to administer the exam to someone who is under the influence. Anders acknowledged that the defendant had told him he smoked a "blunt," but stated that he did not smell marijuana on the defendant's person. He testified that he thought the defendant understood the questions he asked and that the defendant answered them coherently.

7

The government next called FBI, Special Agent Buddy Early ("Agent Early"), who testified that he was assigned to the Violent Crime and Major Offenders Unit ("VCMO") in Knoxville, Tennessee in 2003. This was also his assignment on August 24, 2005. He stated that on that day, Officer Gilreath called him to assist with an investigation of Melvin Davis, who was reportedly "posted up" on the 2500 block of Martin Luther King Avenue in Knoxville. Agent Early stated that before he could make it to the scene, however, he was notified that the defendant had been taken into custody. He testified that he then reported back to the Knoxville Police Department where he "stayed with the defendant" and made "small talk" with him from approximately 9:00 a.m. until 10:00 a.m. He stated that it was during this time that the defendant tried to convince Agent Early and Officer Gilreath that he was innocent and stated that he wanted to take a "lie detector test." Early testified that he sat with the defendant until approximately 10 a.m., at which time the defendant was summoned to take a polygraph examination.

Agent Early testified that once the polygraph examination was concluded, he interviewed the defendant. He stated that he first read the defendant his rights from the Waiver Of Rights form [Ex. SH6] and then asked the defendant to read the waiver himself. He stated that the defendant understood his rights and signed the form. He furthermore stated that the defendant had no problem signing the form. Agent Early testified that he also signed the form, which was witnessed by Officer Gilreath, before proceeding to interview the defendant for approximately thirty (30) minutes regarding the events of that morning. He stated that the interview was not audiotaped, however, because it is policy not to record subjects or witnesses.

Early stated that he was the only officer present during the course of the interview, he was wearing plainclothes, and he did not display a weapon. He also stated that he did not

8

promise, threaten, coerce or badger the defendant. Agent Early testified that the defendant seemed to be oriented in time and place, he was not unsteady, and he did not have blood-shot eyes. Agent Early testified that he was familiar with the defendant's criminal history and knew that the defendant had been arrested on a few occasions. He stated that the defendant had been through the arrest procedure before and seemed familiar with the process.

On cross-examination, Agent Early testified that he did not participate in the defendant's arrest, but stated that the defendant had told him he was smoking a "blunt" at the time of his arrest. Agent Early stated that the defendant did not, however, smell like marijuana. He also stated that he did not question the defendant to determine if he was "high."

The defendant testified on his own behalf after the Court questioned him about his voluntary decision to testify and reminded him of his right to remain silent. Defendant proceeded to testify, in great detail, as to the events leading up to his arrest on the morning of August 24, 2005. He stated that he was alone in his car when he pulled up to a store on Martin Luther King and approached two women who were standing outside the store. He testified that they asked him to "match a blunt" with them. He stated that he then drove the two girls to the 2500 block of Martin Luther King, where he parked his car and proceeded to roll and smoke two (2) blunts, while the girls only rolled and smoked one (1) blunt. The defendant testified that he smoked marijuana for about one (1) hour and that he got "high" during this time.

At approximately 8:30 a.m., the defendant stated that he pulled out of the parking lot to take the girls to school. He testified that when he pulled out, he saw Officer Gilreath driving up the street. He stated that he continued to drive the girls to school, where he was eventually arrested and then taken to the police station. He testified that he told the officers that he had not done

9

anything - that he had not given the cocaine to the girls - and that Officer Gilreath told him that he was not under arrest. He further testified that Officer Gilreath asked him to take a polygraph examination and told the defendant he would let him go if he took it. Defendant stated that he was high and wanted to get out of there, and took the polygraph examination so he could leave.

On cross-examination, when asked how many times he had been arrested, the defendant stated that he "doesn't keep up," but agreed that: (1) he had been convicted of two felonies, (2) he had served time in the penitentiary, (3) he had been around prison guards, (4) he had contact with police officers many times on the street, and (5) he understood his Miranda rights. He testified that Agent Early's testimony regarding him asking for a polygraph examination was not the truth. The defendant denied asking for a polygraph examination.

### III. FINDINGS OF FACT

The Court makes its factual findings in the analysis section of the report.

### IV. ANALYSIS

The defendant contends that any statement he made after he was arrested on August 24, 2006 should be suppressed because he was (1) told he would be released from custody if he agreed to take a polygraph examination and (2) he was under the influence of marijuana while he was being interrogated. The government contends that the defendant was properly advised of the Miranda warnings before the polygraph examination was administered and again before the defendant was interviewed by law enforcement, after the polygraph examination was concluded. It furthermore contends that the defendant made a knowing, intelligent and voluntary waiver of his

10

rights, and that the defendant was completely coherent and in no way under the influence when he made his statement.

*1. Presence of <u>Miranda</u> Warnings*:

The Firth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. <u>Miranda v. Arizona</u>, 384 U.S. 436, 478-79 (1966); <u>see also</u> <u>United States v. Salvo</u>, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes at trial." <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994); <u>Salvo</u>, 133 F.3d at 948.

Initially, the Court finds, noting that the defendant has made no contention to the contrary, that the defendant was fully and specifically advised of the <u>Miranda</u> warnings (1) by Officer Anders prior to the administration of the polygraph examination and again (2) by Officer Early after the polygraph examination was concluded, but before the defendant was questioned and made a statement. Specifically, the Court finds, as clearly depicted on the videotape recording [Ex. SH1] which corroborates Officer Anders' testimony, that the defendant was read his <u>Miranda</u> rights, line-by-line. The Court further finds that the defendant acknowledged that he understood each line and the defendant signed the Waiver of Rights form [Ex. SH3].

Additionally, while there is no audiotape recording to corroborate Agent Early's testimony that he advised the defendant of the <u>Miranda</u> warnings, the Court finds that Agent Early's testimony is credible and unimpeached. More specifically, the Court finds that Agent Early read

11

the defendant his Miranda rights from the Wavier of Rights form [Ex. SH6] and then asked the defendant to read the waiver himself. The Court further finds that the defendant indicated to Agent Early that he understood his rights and signed the form. Thus, the Court finds that the defendant was fully and specifically advised of the Miranda warnings before he made any statement to either Officer Anders or Agent Early.

*2. Waiver of Miranda Rights*:

Next, the Court must determine whether the defendant made a voluntary, knowing, and intelligent waiver of his Miranda rights.

Miranda holds that "'[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.'" Stanley v. Lazaroff, 82 Fed.Appx. 407, 421 (6the Cir. 2003) (citing, Miranda 384 U.S. at 444); United States v. Jones, 935 F.2d 271, 1991 WL 105751, **2 (June 18, 1991 6th Cir.). The test for whether there has been an effective waiver has "two distinct dimensions." Lazaroff, 82 Fed.Appx. at 421; Brewer v. Williams, 430 U.S. 387, 404 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Lazaroff, 82 Fed.Appx. at 421 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987), and Moran v. Burbine, 475 U.S. 412, 421 (1986)). Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Id.

Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that

12

the Miranda rights have been waived. Id. Factors for the Court to weigh include the "age, education, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Finley v. Rogers, 116 Fed.Appx. 630, 636 (6th Cir. 2004). Finally, the prosecution has the burden of establishing a valid waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

### a. Voluntary Prong of the Miranda Waiver

As the Sixth Circuit indicated in United States v. Newman, "[e]vidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." 889 F.2d 88, 94 (6th Cir. 1989); Connelly, 479 U.S. at 167. In other words, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. A confession is involuntary only if there is police coercion or overreaching that overbore the accused's will and caused the confession. Williams v. Jones, 117 Fed.Appx. 406, 412 (6th Cir. 2004).

In the present case, the defendant argues that the waiver of his Miranda rights and any resulting statements that he made to law enforcement were involuntarily because he was told he would be released from custody if he agreed to take a polygraph examination. At the suppression hearing, the defendant testified that after he was taken into custody and driven to the police station, Officer Gireath (1) asked him to take a polygraph examination and then (2) told him he could leave

13

if he agreed to take it. The defendant maintained that he agreed to take the polygraph examination so he could leave the police station. Contrary to the defendant's testimony, Agent Early testified that once the defendant was at the KPD, he stayed with the defendant for approximately one (1) hour, during which time he engaged in "small talk" with the defendant. Agent Early stated that it was during this time that the defendant tried to convince him and Officer Gilreath that he was innocent and told them that he wanted to take a "lie detector test."

The Court finds that the testimony of Agent Early and Officer Anders is credible and unimpeached. On the other hand, the Court finds that the testimony of the defendant is not credible for reasons set forth in this Report. Accordingly, the Court finds that (1) the defendant specifically asked to take a "lie detector test," or polygraph examination, (2) the defendant was not coerced into taking the test by Officer Gilreath, or any other officer, (3) the defendant signed a Waiver of Rights form [Ex. SH3] before the polygraph examination was administered, and (4) the defendant signed a "Consent to Polygraph Examination" form [Ex. SH2], which explicitly provided that "I voluntarily agree to be examined...I understand that I have the right to refuse to take the examination...I understand that I may terminate the examination at any time."

Furthermore, the Court finds that Agent Early and Officer Anders never displayed a firearm, nor did they ever promise, threaten, coerce or badger the defendant in any way. The Court also finds that the length of the polygraph exam, which was approximately one hour and thirty minutes, and the length of the interview conducted by Agent Early, which was approximately thirty minutes, was not coercive. Because this case involves no acts of overbearing or overreaching by law enforcement, the Court finds that the defendant's waiver and resulting statements were voluntary, in that they were the product of a free and deliberate choice rather than intimidation,

14

coercion, or deception.

### b. Knowing and Intelligent Prong of the Miranda waiver

A waiver is knowing and intelligent if it is "made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Grecni, 940 F.2d 663, 1991 WL 139703, **3 (July 30, 1991 6th Cir.) (unpublished opinion).

In the present case, the defendant argues that the waiver of his Miranda rights [Ex. SH3 and SH6] and any resulting statements that he made to law enforcement were not knowing and intelligent because he was under the influence of marijuana at the time, causing him to "ramble" and slur his speech, and making him unable to sit still, focus or follow directions during the interrogation. The Court does not agree with the defendant's averments for the following reasons:

First, the Court finds that Officer Anders has been employed as an officer with the KPD for approximately twenty-seven years and is trained and experienced to observe people during Miranda waivers and during the administration of polygraphs for signs of intoxication. Officer Anders testified that he observed the defendant to be sober and not intoxicated, to be steady, to be able to converse rationally and coherently, to not have blood-shot eyes, to be oriented in time and place, to understand each line of the Miranda rights form, and to understand the questions he was asked and to answer appropriately. During the pre-exam interview when Officer Anders was taking the defendant's medical history, the defendant informed Officer Anders that he had recently smoked marijuana. Anders testified that he did not smell any marijuana on the defendant and would not have administered the polygraph examination if the defendant had appeared intoxicated because it is against the law of the American Polygraphers to administer an exam when the subject is

15

intoxicated. Likewise, Agent Early testified that during the course of his conversation and interaction with the defendant from 9:00 a.m until 10:00 a.m., which was one (1) hour before the defendant was summoned for the polygraph exam, the defendant seemed to be oriented in time and place, was steady, did not have blood-shot eyes, had a comfortable demeanor, and did not smell like marijuana. The Court finds that the testimony of Agent Early and Officer Anders is credible and unimpeached.

Second, after reviewing the videotape recording, the Court finds that the videotape corroborates the testimony of the officers and their assessment of the defendant. While the defendant avers that he smoked marijuana a couple hours prior to making his statement, it does not appear to the undersigned that the defendant was either under the influence of marijuana, or any other intoxicant. The Court finds there is no reason to believe that the defendant could not knowingly and intelligently waive his rights, as the defendant appeared: (1) attentive, calm and cooperative, (2) alert and oriented in time and place, (3) to have good motor skills - he was able to walk, stand and sit normally, (4) to understand the questions he was asked and to formulate appropriate and responsive answers, and (5) to be able to write, at least to the extent that he signed the waivers in question. The Court also notes that the defendant's signature on the earlier waiver [Ex. SH3] appears more legible than his signature two hours later [Ex. SH6].

Furthermore, the Court finds that the defendant's speech was not slurred on the videotape, but was, in fact, clear and precise and without hesitation. To the extent that the defendant was arguably "rambling" on the videotape, the Court notes that the defendant did not sound a whole lot different in court than he did on the tape. The Court was also struck by the defendant's ability, during the hearing, to recall with considerable specificity the facts leading up to his arrest, the

16

conversations he had with Officer Gilreath and Agent Early, and matters leading up to and during the polygraph examination, interview and statement. The fact that the defendant was able to give a detailed testimony concerning the events of that day makes it even more implausible to the Court that the defendant was intoxicated to the degree that he could not make a knowing and intelligent waiver of his rights. Finally, the Court finds that the defendant has never once waivered from his contention that the cocaine found on the minor female was not his. This fact that he "never changed his story" throughout the course of the polygraph examination and post-examination interview, lends further credence to the Court's belief that the defendant was not confused or deceived in any sense, but instead was fully aware and capable of making a knowing and intelligent waiver of his rights.

Lastly, the Court finds that the defendant has a rather extensive criminal history and is familiar with the criminal justice system. At the hearing, the defendant agreed that (1) he had been convicted on two felony charges, (2) he had served time in the penitentiary, (3) he had been around prison guards, (4) he had contact with police officers many times on the street, and (5) he understood his <u>Miranda</u> rights. The Court also finds that on the day in question, the defendant appeared comfortable and familiar with the arrest and polygraph examination process. The Court further finds that prior to the defendant signing the waivers, Officer Anders and Agent Early reviewed the Waiver of Rights form, line-by-line, with the defendant and the defendant acknowledged that he understood his rights.

The Court finds, based on the totality of the circumstances surrounding the polygraph examination, post-exam interview and resulting statements, that the defendant did have the capacity to voluntarily, knowingly and intelligently waive his <u>Miranda</u> rights. More specifically, the Court

17

Case 3:05-cr-00112  Document 78  Filed 03/24/06  Page 17 of 18  PageID #: 78

conversations he had with Officer Gilreath and Agent Early, and matters leading up to and during the polygraph examination, interview and statement. The fact that the defendant was able to give a detailed testimony concerning the events of that day makes it even more implausible to the Court that the defendant was intoxicated to the degree that he could not make a knowing and intelligent waiver of his rights. Finally, the Court finds that the defendant has never once waivered from his contention that the cocaine found on the minor female was not his. This fact that he "never changed his story" throughout the course of the polygraph examination and post-examination interview, lends further credence to the Court's belief that the defendant was not confused or deceived in any sense, but instead was fully aware and capable of making a knowing and intelligent waiver of his rights.

Lastly, the Court finds that the defendant has a rather extensive criminal history and is familiar with the criminal justice system. At the hearing, the defendant agreed that (1) he had been convicted on two felony charges, (2) he had served time in the penitentiary, (3) he had been around prison guards, (4) he had contact with police officers many times on the street, and (5) he understood his <u>Miranda</u> rights. The Court also finds that on the day in question, the defendant appeared comfortable and familiar with the arrest and polygraph examination process. The Court further finds that prior to the defendant signing the waivers, Officer Anders and Agent Early reviewed the Waiver of Rights form, line-by-line, with the defendant and the defendant acknowledged that he understood his rights.

The Court finds, based on the totality of the circumstances surrounding the polygraph examination, post-exam interview and resulting statements, that the defendant did have the capacity to voluntarily, knowingly and intelligently waive his <u>Miranda</u> rights. More specifically, the Court

finds that the defendant's waiver of his Miranda rights and any resulting statements made thereafter were the product of both an uncoerced choice and the requisite level of comprehension. Thus, the Court finds that there is no basis to suppress the statements made by the defendant.

## IV. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that the defendant's Motion to Exclude Any Alleged Confession of Defendant [Doc. 61] be **DENIED**.[1]

**ENTER:**

　　　s/ C. Clifford Shirley, Jr.
　　　United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).