IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:05-CR-112 |
| | ) | | (VARLAN/SHIRLEY) |
| MELVIN DAVIS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM & ORDER**

On April 20, 2006, the defendant was convicted by a jury on both counts of the two-count superseding indictment. *See* Doc. 93. The first count charged that defendant was possessed with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack. The second count charged that defendant possessed with the intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack, within 1,000 feet of a public secondary school.

This criminal case is before the Court for consideration of defendant's Motion for a Judgment of Acquittal or for a New Trial Under Fed. R. Crim. P. 29 and 33 and Renewed Motion for a Mistrial Under Rule 26.3 [Doc. 95]. By this motion: defendant renews his motion for acquittal as to both counts; defendant renews his motion for acquittal especially as to count two; defendant seeks a new trial based on the government's alleged failure to comply with discovery requirements; and defendant seeks reconsideration of the Court's

denial of defendant's motion for a mistrial. The government has responded in opposition to the motion. *See* Doc. 98.

Having reviewed the briefs, the trial transcript, and certain exhibits, the Court will deny defendant's motion for the reasons discussed herein.

**I.     Renewed Motion for Acquittal**

    A.     <u>Standard of Review</u>

An order granting defendant's motion for judgment of acquittal shall be entered "if the evidence is insufficient to sustain conviction of such offense." Fed. R. Crim. P. 29(a). The Court's standard of review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martin*, 897 F.2d 1368, 1373 (6th Cir. 1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When deciding a motion for judgment of acquittal, the district court must not make independent determinations regarding the credibility of witnesses or the weight to be given such evidence. *United States v. Walls,* 293 F.3d 959, 967 (6th Cir. 2002) (citing *United States v. Welsh*, 97 F.3d 142, 148-51 (6th Cir. 1996)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994) (citing *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986), *cert. denied*, 476 U.S. 1123 (1986)).

Defendant argues that the Court should grant his renewed motion for judgment of acquittal, and especially as it relates to Count Two of the superseding indictment, because

2

conviction on the second count depended solely on the "unsupported," "suspect" testimony of Ranisha Ewing. *See* Doc. 95 at 1-3. The government opposes the motion by arguing that the evidence, viewed in the light most favorable to the government, was sufficient to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." Doc. 98 at 1-3 (quoting *Jackson*, 443 U.S. at 319).

As to the first count, two officers testified that a approximately a substance, which based on laboratory tests was cocaine base, was recovered from defendant's sock. As to the second count, two witnesses testified that defendant possessed a substance, which based on laboratory tests was cocaine base, that was seized by police officers from Ms. Ewing after they observed some back-and-forth gestures between Ms. Ewing and defendant.

The Court is constrained to view the evidence in the light most favorable to the government, *see Martin*, 897 F.2d at 1373, and refrain from making any independent judgments about the credibility of witnesses or the weight of the evidence, *see Walls,* 293 F.3d at 967. Defendant's motion, however, asks the Court to evaluate the credibility of Ms. Ewing and to weigh the evidence as to both offenses. This the Court declines to do. Because, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the elements of the crimes in this case beyond a reasonable doubt, *see Martin*, 897 F.2d at 1373 (quotation omitted), the Court will deny defendant's renewed motion for acquittal.

## II. Motion for New Trial

### A. Standard of Review

Next, defendant seeks a new trial pursuant to Fed. R. Crim. P. 33. In a motion for new trial, the defendant bears the burden of demonstrating the need for a new trial, and such motions are only sparingly granted. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991); *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976).

Defendant argues that justice requires a new trial because the government failed to comply with the rules of discovery. *See* Doc. 95 at 2-3. The government opposes the motion by arguing that it satisfied its obligations under Rule 16, the Jencks Act, and *Brady*, and that defendant's complaints are factually inaccurate and untimely. *See* Doc. 98 at 3-5.

Defendant's argument is focused on the alleged failure to disclose an alleged deal not to prosecute government witness, Ranisha Ewing; the alleged failure to provide chemical test documents relied upon by the government's expert witnesses; and an alleged failure to disclose an allegedly exculpatory statement. *See* Doc. 95 at 2-3. The Court will address each in turn.

First, defendant persistently argues that the government failed to disclose a "deal not to prosecute Ranisha Ewing in exchange for her testimony." *Id*. at 2. At trial, Ms. Ewing gave contradictory testimony as to whether there was an agreement, and defendant was granted some latitude to explore the subject to determine whether such an agreement actually existed. *See* Doc. 100 at 280-96. The government repeatedly denied the existence of an agreement. *See id.* As a result, the government and defendant both elicited the testimony of

4

Ms. Ewing's attorney, in which he stated that there was no such deal. *See id.* at 315-26. In light of the statements of the government, Ms. Ewing's attorney, and Ms. Ewing, the Court is unable to conclude that such an agreement existed, and consequently it cannot conclude the government failed to disclose such an agreement to defendant prior to trial.

Second, defendant argues that the government failed to comply with Fed. R. Crim. P. 16(g), which requires the disclosure, upon defendant's request, of the bases for the government's expert witnesses opinions that the substances attributed to defendant were cocaine base. *See* Doc. 95 at 3. Defendant raised this issue during the trial, and the Court, after reviewing an exchange of correspondence between the parties, as well as the government's notice of expert testimony [Doc. 79], concluded that the government had complied with Rule 16(g). *See* Doc. 100 at 219-39. Furthermore, out of an abundance of caution, the Court directed the chemists to turn their notes over to defendant and offered defendant additional time to prepare his cross-examination, but defendant declined. *See id.* at 242. Even then, the chemists did not testify until the following day, which afforded defendant additional time to prepare for cross-examination. *See id.* at 244. In short, the Court concluded that there had been no violation of Rule 16(g), but even if that conclusion was erroneous, defendant was provided the additional notes and given additional time to prepare his cross-examination.

Finally, defendant asserts that the government, "failed to disclose an exculpatory written statement made by Sgt. Mark Fortner which contradicted the testimony of Todd Gilreath as to the knowledge of Gilreath of the Defendant and as to the activities of both in

5

regards to confronting the Defendant in the barbershop on March 9, 2005." Doc. 95 at 3 (referring to Doc. 95-2). The government notes that it provided defendant with the statement pursuant to the Jencks Act before Sgt. Fortner's testimony and that defendant could have recalled Investigator Gilreath to confront him with any alleged contradictions, but defendant did not do so. *See* Doc. 98 at 4-5. Defendant has failed to explain how the statement is exculpatory and offers no argument as to how the statement should have been disclosed under Rule 16 or *Brady*. Accordingly, the Court cannot conclude that the defendant's complaint requires a new trial.

### III. Motion for Reconsideration of Denial of Motion for Mistrial

Defendant argues that the Court should reconsider its denial of defendant's motion for a mistrial because the government engaged in improper bolstering of a witness's testimony when the prosecutor said that the government "does not prosecute innocent people" or words to that effect. *See* Doc. 95 at 3-4. In addition, defendant argues that evidence of defendant's polygraph examination was improperly placed before the jury by the government. *See id.* at 4. The government opposes the motion by arguing that defendant has failed to demonstrate that the Court erred in its denial of a mistrial. *See* Doc. 98 at 5-7.

    A.    <u>Prosecutor's Comment</u>

When defendant moved for a mistrial during the trial, the Court stated that the standard for evaluating a motion for mistrial is that the Court must determine, in the exercise of its discretion, whether the evidence at issue is of an exceptionally prejudicial character, such that its withdrawal, or a curative instruction to the jury, cannot be expected to remove

the harm. *See United States v. Carr*, 5 F.3d 986, 992-93 (6th Cir. 1993). Applying that standard with respect to the prosecutor's inappropriate remark, the Court noted that after the comment it twice reminded jurors not to give any weight or otherwise consider as evidence the remarks or objections of counsel. *See* Doc. 99 at 136, 142. The Court also repeated this admonition when it gave its final instructions to the jury. The Court then stated that in light of all the circumstances, those curative instructions were sufficient to remove any harm caused by the prosecutor's remark. *Id*. at 151. The defendant has offered nothing to suggest that the Court's handling of this issue was legally erroneous.

    B.    <u>Polygraph</u>

Turning to the issue of the polygraph examination, defendant never moved for a mistrial based upon the appearance of the words "polygraph room" on the location line of the Miranda rights waiver form introduced by the government as government's exhibit 7. *See* Doc. 100 at 351-52. Instead, defendant objected to the introduction of the exhibit because it included the words "polygraph room." *See id.* The Court sustained the objection and instructed the government to redact those words from the exhibit, which the government did. *See id.* The defendant has offered nothing to suggest that the Court's handling of defendant's objection was legally erroneous.

Instead, defendant now argues, for the first time, for a mistrial because the exhibit was inadvertently displayed to jurors before it was redacted. *See* Doc. 95 at 4. This argument exaggerates what actually occurred.

During the second day of the trial, the government was conducting direct examination of Gary Anders, of the Knoxville Police Department, who interviewed defendant after his arrest on August 24, 2005. *See* Doc. 100 at 349-50. The government asked the witness whether defendant waived his *Miranda* rights, displayed the Miranda rights waiver on the courtroom's display equipment so the witness could see it, and asked that the form be admitted into evidence. *See id.* at 351. Within a matter of seconds from the time the form appeared on the screen, defendant objected, asked that the form be removed from the screen, and the courtroom deputy removed the form. *See id.* at 351-52. The parties then approached the bench where the Court heard and ultimately granted defendant's objection to the display of the words "polygraph room." *See id.* at 351-52.

Applying the standard discussed in *Carr*, the Court is satisfied that the immediate removal of the document, followed by the redaction of the reference to "polygraph room," as well as the Court's final instructions to the jury to consider only the evidence before them, removed any possible harm that might have resulted from the momentary, inadvertent display of the words "polygraph room" on the location line of the *Miranda* rights waiver form. Furthermore, in the context of the instant motion, defendant has offered no argument or authority to suggest the Court's handling of defendant's objection was insufficient to remove any harm.

8

Case 3:05-cr-00112   Document 103   Filed 06/27/06   Page 8 of 9   PageID #: 97

**IV. Conclusion**

For the reasons discussed herein, the Court hereby **DENIES** defendant's motion [Doc. 95].

IT IS SO ORDERED.

                                              s/ Thomas A. Varlan
                                              UNITED STATES DISTRICT JUDGE